1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

    Plaintiff,

  v.

DEAUNTRE MONTGOMERY,

    Defendant.

                                    /

No. CR 17-00095 WHA

**ORDER DENYING MOTION TO SUPPRESS FRUITS OF UNLAWFUL SEARCH AND SEIZURE**

## INTRODUCTION

In this criminal action, defendant moves to suppress the fruits of a warrantless search of his person. For the reasons stated below, defendant's motion is **DENIED**.

## FINDINGS OF FACT

On November 29, 2016, SFPD MUNI Task Force Officers Graham Matthews and Joshua Fry overheard defendant Deauntre Montgomery trying to sell a Nike jacket (cheap with its price tag still attached) at Seventh and Market Streets, a high-crime area in San Francisco. Montgomery, who wore a baggy sweatshirt, then turned towards the plainclothes officers and offered to sell the jacket to Officer Fry (Tr. 12:2–14:23; 56:12–57:19).

Soon after, Montgomery recognized Officers Matthews and Fry as police officers. Montgomery started to look nervous. He stepped back, turned quickly to his right, and began to walk away in the opposite direction. At this point, Officer Matthews testified that he saw Montgomery's hand reach down towards his waistband. Officer Fry, by contrast, observed that

as Montgomery turned, his right hand remained unnaturally stationary near his hip, as if he were trying to hold in place contraband or a weapon (Tr. 15:1–17:12; 57:20–59:15).[1]

Although the officers remembered different movements, they each remembered hand positions consistent with a gun in the waistband. Montgomery's conduct independently and simultaneously caused them to suspect that Montgomery carried either contraband or a weapon. The officers looked at each other, nodded, and then quickly proceeded after Montgomery while identifying themselves as police officers. Officer Matthews grabbed Montgomery's right arm while Officer Fry grabbed his left. Officer Fry then reached towards Montgomery's waistband and felt a gun. The officers handcuffed Montgomery and seized the weapon (Tr. 17:18–20:10; 64:12–67:1).

In February 2017, Montgomery was indicted for being a felon in possession of a firearm. Montgomery filed the instant motion to suppress in November and an evidentiary hearing took place in January 2018. The parties submitted supplemental briefing, which this order follows (Dkt. Nos. 1, 13, 25–28).

**ANALYSIS**

An officer may conduct a brief, investigatory stop — a so-called "*Terry* stop" — where the officer has a "reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). Moreover, a limited frisk for weapons is permissible when based on an officer's reasonable belief based on specific and articulable facts. Mere "inchoate and unparticularized suspicion or 'hunch'" that the suspect is armed and dangerous is not sufficient. *Terry v. Ohio*, 392 U.S. 1, 27 (1968). As the Supreme Court has articulated:

> *Terry* did not adopt a bright-line rule authorizing frisks for weapons in all confrontational encounters. Even in high crime areas, where the possibility that any given individual is armed is significant, *Terry* requires reasonable, individualized suspicion before a frisk for weapons can be conducted.

*Maryland v. Buie*, 494 U.S. 325, 334 n.2 (1990). The nature of the suspected crime along with other information regarding the defendant's dangerousness should be considered in determining

---

[1] On cross-examination, Officer Fry admitted that his police report omitted the fact that Montgomery's arm remained stationary as he turned away from the officers. Rather, his report stated that Montgomery's hand was near the right side of his pants. Because these two descriptions are not mutually exclusive, this omission is not sufficient to discredit Officer Fry's testimony (Tr. 89:4–13).

whether the officers had a reasonable belief to warrant a frisk. *United States v. Flatter*, 456 F.3d 1154, 1157–58 (9th Cir. 2006).

Montgomery does not dispute that the officers had a reasonable suspicion that he engaged in criminal activity (selling stolen goods) and that therefore the officers could conduct a *Terry* stop. Montgomery does dispute, however, that the officers had a reasonable suspicion that he was armed and dangerous.

Officers Matthews and Fry testified that they believed Montgomery could be armed and dangerous based on: (1) Montgomery's reaction when he recognized them as police officers; (2) their location in a high-crime area; (3) the officers' belief that Montgomery attempted to sell stolen property; and (4) the officers' observations regarding the movement and positioning of Montgomery's right arm as he turned to walk away. Officer Fry additionally testified that Montgomery's baggy clothing aroused suspicion, and that in Officer Fry's experience people selling stolen property at Seventh and Market Streets are more likely to carry weapons than the general public. Officers Matthew and Fry had a combined 13 years of experience as SFPD officers. Based on this experience and their training as police officers, the conduct they observed led them to believe that Montgomery may have been carrying a weapon (Tr. 9:24–25; 17:21–22:9; 54:8–9; 62:6–64:11).

A trained police officer may well "draw inferences and make deductions — inferences and deductions that might well elude an untrained person." *United States v. Cortez*, 449 U.S. 411, 418 (1981). "[T]he evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." *Ibid*. Our court of appeals has observed that safety determinations by officers are "best left to the discretion of the officers in the field who confront myriad circumstances we can only begin to imagine from the relative safety of our chambers." *United States v. Williams*, 419 F.3d 1029, 1034 (9th Cir. 2005).

Applying the above principles, and assessing all of the circumstances, this order finds that the officers could have reasonably suspected that Montgomery was armed and dangerous.

Montgomery attacks this conclusion on multiple grounds.  *First*, he argues that — as a matter of both fact and law — the sale of stolen property is not sufficiently associated with weapons so as to justify a frisk.  As a matter of law, Montgomery contends that the sale of stolen property is akin to mail theft and drug use, suspicion of which does not automatically give rise to a reasonable belief that a suspect is armed and dangerous.  But while courts consider "the nature of the crime suspected" in determining the reasonableness of a frisk, and while "some crimes are so frequently associated with weapons that the mere suspicion that an individual has committed them justifies a pat down search," *Flatter*, 456 F.3d at 1158, Montgomery's authorities merely indicate that suspicion of certain crimes *alone* is insufficient to give rise to a belief that a suspect is dangerous.  Here, by contrast, the officers testified to additional facts substantiating their belief that Montgomery was armed, including that he nervously and abruptly turned away from them while moving his arm in an unnatural manner.[2]

As a matter of fact, Montgomery relies on the Declaration of Michael Portman, through which Montgomery submits evidence that between 2012 and 2016, only 4.1% of stolen property incidents in the area of Seventh and Market Streets involved a weapon (Dkt. No. 24).  This evidence, Montgomery argues, demonstrates the unreasonableness of Officer Fry's conclusion that because Montgomery may have been selling stolen property, he was also more likely to be armed.

Officer Fry testified that of the 15 to 20 stolen property crimes he recently investigated, 5 or 6 of those incidents involved a weapon (Tr. 91:21–92:10).  That this testimony does not align perfectly with Montgomery's statistical evidence does not render Officer Fry's belief — that individuals engaged in stolen property crimes are more likely than the general public to be armed — worthless.  Rather, even if Officer Fry *had* only experienced armed suspects in 4.1%

---

[2] In *United States v. Thomas*, by contrast, our court of appeals held that police did not have reasonable suspicion to frisk a man suspected of passing counterfeit money where there was nothing to suggest that the suspect "made any abrupt movements or engaged in suspicious, furtive behavior during the course of the investigation that would have justifiably prompted" the officer to fear for his safety.  863 F.2d 622, 629 (9th Cir. 1988); *see also Ramirez v. City of Buena Park*, 560 F.3d 1012, 1022 (9th Cir. 2009); *Thomas v. Dillard*, 818 F.3d 864, 879 (9th Cir. 2016).

4

of his investigations into stolen property crimes, it would still be appropriate for him to consider this experience in reaching his reasonable belief that Montgomery carried a weapon.

*Second*, Montgomery argues that various facts underlying the officers' reasonable suspicion — including that Montgomery was wearing baggy clothing, the high-crime area of Seventh and Market Streets, and Montgomery's nervous demeanor and reaction to the officers' presence — do not give rise to a reasonable suspicion justifying the officers' frisk. Again, Montgomery's authorities at most indicate that, viewed in isolation, each of these factors may not give rise to a reasonable suspicion that a suspect is armed and dangerous. District courts, however, must analyze "the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security." *Williams*, 419 F.3d at 1031. Moreover, unlike in *United States v. Lopp*, 186 F. Supp. 3d 1037, 1043 (N.D. Cal. 2016) (Judge Yvonne Gonzalez Rogers), where the defendant simply drove away at a normal speed in the same direction her car was facing, here Montgomery quickly did an about face upon recognizing the officers.

*Third*, Montgomery points to inconsistencies in the officers' testimony which he argues discredits them. But while their testimony did have certain inconsistencies, those inconsistencies did not render the officers' testimony unreliable. Rather, even considering the differences in the officers' observations of Montgomery's hand movements, both officers saw a movement that appeared suspicious and unordinary, indicating to them that Montgomery had a weapon in his waistband. Their testimony was coherent and plausible. The officers' further inconsistent statements — occurring over a year after the incident — regarding the specific time at which the gun was removed from Montgomery's person also did not discredit the officers so far as to make their entire testimony unreliable.

As discussed above, the totality of the circumstances here shows that it was reasonable for the officers to suspect Montgomery was armed and dangerous. Because the detention and frisk were lawful, suppression must be denied.

5

**CONCLUSION**

For the reasons stated above, Montgomery's motion to suppress is **DENIED**. A status hearing on this matter is scheduled for **MARCH 6 AT 2:00 P.M.**

**IT IS SO ORDERED.**

Dated: February 16, 2018.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE